UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROOSEVELT WILLIAMS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 3:12-CV-089 JD |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Roosevelt Williams, a *pro se* prisoner, filed a habeas petition challenging a prison disciplinary proceeding. (DE 1.) On July 12, 2011, a hearing officer at Indiana State Prison ("ISP") found Williams guilty of possession/use of a controlled substance in Cause #ISP 11-07-0001. (DE 20-3 at 1.) The charge was initiated on June 30, 2011, when Officer Willie Parnell wrote a conduct report stating as follows:

> On 6-30-2011 the test results from the REDWOOD TOXICOLOGY LABORATORY were received by the Internal Affairs Department of INDIANA STATE PRISON. While looking through the results offender Roosevelt Williams #974618 had a positive test for Marijuana (THC). On 6-25-2011 offender Williams provided a urine specimen for the Offender Urinalysis Program.
>
> Redwood Laboratory found the seal sealed on the specimen bottle. This specimen was sealed in front of offender Williams by the administrator of the test.
>
> Note: According to CMS offender Williams was/is not any medication at the time that would test positive for the above drug.

(DE 20-1 at 1.) A laboratory report was attached, showing a positive drug test result for Williams. (*Id*. at 2.)

On July 7, 2011, Williams was notified of the charge and given a copy of the conduct report. (DE 20-1 at 1; DE 20-2 at 1.) He pled not guilty and requested a lay advocate. (DE 20-2 at 1.) He

requested witness statements from Officer R. Glover and Sergeant S. Hough, who could attest that he "wasn't allowed to sign the seal on the cup" containing the urine specimen. (*Id.*) He also requested a "picture of the seal" as physical evidence. (*Id.*) Prior to the hearing, statements were obtained from the requested witnesses. Sgt. Hough provided the following statement: "As I told Mr. Williams, I have no knowledge of the urine test policy." (DE 20-2 at 2.) Officer Glover provided a statement as follows:

> On this day of 6-30-11, I Ofc. R. Glover witnessed a conversation held by Mr. Williams (974018) and Ofc. Parnell. Mr. Williams had asked Ofc. Parnell, "How come I can't sign for my own urine?" Ofc. Parnell in turn stated, "This is how I always do it." This conversation took place in front of the officers station which was audible to other officers. Based on what I heard, I concluded that Mr. Williams did not sign/initial his own urine specimen.

(DE 20-2 at 3.) Williams's request for a photo of the seal was denied, because no such photo had been taken. (DE 20-3 at 1.)

Prior to the hearing, Williams submitted a request for an additional witness statement from Officer Parnell to "confirm Williams did not sign the security seal for the specimen he provided[d]." (DE 20-2 at 4.) He also requested that "D.O.C. policy for Urine Testing be available at the hearing to present and refer to for defenses purposes." (*Id.*) A statement was obtained from Officer Parnell, who stated as follows: "Offender Williams was present when I placed his initials on the urinalysis cup. The reason I initial the cup is to avoid offender contact with the specimen once I collect it. The offender still signs the form of the initial test sheet and lab form." (DE 20-3 at 2.)

On July 12, 2011, the hearing officer conducted a hearing on the charge. (DE 20-3 at 1.) Williams made the following statement: "I believe Ofc. Parnell switched my urine sample. Policy states that I am the one who should initial the seal of the urinalysis cup, not Ofc. Parnell. Ofc. Parnell did not follow policy." (*Id.*) The hearing officer considered this statement, along with staff

2

reports, witness statements, and the test results. (*Id.*) She found him guilty, stating, "Because Ofc. Parnell initialed the urinalysis cup in front of Off. Williams, I believe chain of custody was followed. The test results support the C/R. I believe the C/R to be true and accurate and therefore find him guilty." (*Id.*) Among other sanctions, Williams lost earned-time credits. (*Id.*) His administrative appeals were denied (DE 20-4), and he thereafter filed the present petition.

When a due process liberty interest is at stake in prison disciplinary hearings, the Fourteenth Amendment guarantees prisoners certain procedural due process protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Williams first claims that he was denied his right to present witnesses in his defense. (DE 1 at 3.) A prisoner has a limited right to call witnesses and present evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer may deny a witness or evidence request that threatens institutional goals or is irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence); *see also Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996) ("exculpatory evidence" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's]

3

guilt"). The denial of the right to present evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Piggie*, 342 F.3d at 666.

Here, the record shows that Williams requested statements from three witnesses, and these statements were obtained and considered. (*See* DE 20-2 at 1-4.) One of the officers had no relevant information, and the other two provided statements supporting Williams's account that he did not initial the seal on the specimen cup himself. (*Id.* at 2-4.) To the extent Williams is claiming that he was denied the opportunity to cross-examine the officers, he had no constitutional right to do so. *Wolff*, 418 U.S. at 556. The formal rules of evidence do not apply at disciplinary proceedings, nor is there any right to confront or cross-examine adverse witnesses. *Id.*; *Piggie*, 342 F.3d at 666. Moreover, the hearing officer credited the testimony that Williams had in fact not initialed the cup himself. She nevertheless concluded that because the cup had been sealed and initialed by the officer in Williams's presence, there was adequate evidence that the urine belonged to him. (DE 20-3 at 1.) Williams has not demonstrated how any additional testimony from the officers on this issue would have aided his defense.

Williams states that he also wanted to obtain a statement from an "Officer Ralph" and an IDOC official named Howard Morton, but there is no indication from the record that he requested such evidence during the screening process. (*See* DE 21 at 2.) He cannot fault the hearing officer for failing to consider evidence he did not timely request. *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (if an inmate fails to request exculpatory evidence "either before or at the hearing, then the CAB could not have denied him due process by not considering the request.").

Furthermore, Williams does not provide detail about the proposed testimony of these witnesses, and without a showing of prejudice he cannot demonstrate a due process error. *Piggie*, 342 F.3d at 666. It appears he wanted these witnesses to provide additional testimony about the fact that he did not initial the specimen cup himself, but as explained above, the hearing officer heard other testimony on this issue. She concluded that even if Williams did not initial the specimen cup himself in accordance with IDOC policy, there was sufficient evidence that the urine sample belonged to him. (DE 20-3 at 1.) Thus, additional testimony that Williams did not initial the cup would not have aided his defense. *See Jones*, 637 F.3d at 847 (inmate was not prejudiced by inability to call witness whose proposed testimony would not have exculpated him from the charge). To the extent Williams is claiming that he is entitled to habeas relief because IDOC policy was not followed, he is incorrect. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of IDOC policy in disciplinary proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law"). Accordingly, his claim is denied.

Williams also claims that he was improperly denied a photo of the cup. (DE 1 at 5.) However, he has not established a due process error in this regard, because the record shows that no such photo exists. (DE 20-3 at 1.) Although an inmate is entitled to *existing* exculpatory evidence, he is not entitled to the creation of favorable evidence. *See Outlaw v. Wilson*, No. 3:07cv54, 2007 WL 1295815 (N.D. Ind. Apr. 30, 2007); *Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988); *Hester*, 966 F. Supp. at 773. Williams may have envisioned the hearing proceeding like a criminal trial, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and

5

the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. In any event, Williams has not established that a photo of the specimen cup would have exculpated him. *See Piggie*, 342 F.3d at 666; *Rasheed-Bey*, 969 F.2d at 361. As stated above, the hearing officer was aware that Williams did not initial the cup himself, but nevertheless found the evidence sufficient that the specimen belonged to him. (DE 20-3 at 1.) Accordingly, he has not established a violation of his due process rights.

In a similar vein, Williams argues that he was denied a physical copy of the IDOC policy regarding urinalysis testing. (DE 1 at 5.) There is nothing in the record to indicate that the hearing officer denied this request; however, assuming the policy was not made available to him, he has not demonstrated how a physical copy of the policy would have aided his defense. *See Piggie*, 342 F.3d at 666; *Rasheed-Bey*, 969 F.2d at 361. Williams was obviously well aware of the requirements of the policy, and he raised a defense based on Officer Parnell's failure to comply with the policy. (DE 20-3 at 1.) He also submitted witness statements supporting his defense. (DE 20-3 at 2; DE 20-2 at 3.) The hearing officer considered these statements, and was aware that Williams had not initialed the cup himself in accordance with policy, but she nevertheless found the evidence sufficient that the specimen belonged to him. (DE 20-3 at 1.) He has not established a federal due process error in this regard.

Giving the petition liberal construction, Williams may also be claiming that there was insufficient evidence to support the guilty finding. (DE 1 at 5.) The relevant standard is whether there is some evidence to support the finding of guilt. *See Hill*, 472 U.S. at 457. This is not a high standard, and in determining the sufficiency of the evidence, courts do not "conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only

determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The court will overturn a guilty finding based on insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Furthermore, a hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

In this case, there is sufficient evidence to support the hearing officer's determination, including the conduct report, the laboratory report, and the witness statements. *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (7th Cir. 1999) (conduct report provided some evidence to support disciplinary determination). There is also sufficient evidence that chain-of-custody precautions were observed to ensure the sample belonged to Williams; the record shows that the officer sealed and initialed the cup in Williams's presence, and the seal was still intact when the sample arrived at the laboratory. (DE 20-1 at 1; DE 20-3 at 1, 2.) To the extent Williams is claiming that he could not have been found guilty without conclusive evidence that the urine was his, he is incorrect. *Hamilton*, 976 F.2d at 345. This was not a criminal proceeding, and the hearing officer was not required to prove his guilt beyond a reasonable doubt. *See Hill*, 472 U.S. at 457. The question for this court is simply whether there is some evidence to support the hearing officer's determination, and that standard is satisfied. Under these circumstances, Williams has failed to establish a due process error.

Williams also appears to claim that the hearing officer's written statement was inadequate. (DE 1 at 5.) The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Here, the hearing officer stated that in reaching her decision she considered staff reports, witness statements, the laboratory report, and Williams's own statement. (DE 20-3 at 1.) She found him guilty, stating, "Because Ofc. Parnell initialed the urinalysis cup in front of Off. Williams, I believe chain of custody was followed. The test results support the C/R. I believe the C/R to be true and accurate and therefore find him guilty." (*Id.*) Although this statement was not lengthy, it adequately identified the evidence relied on and her reasoning, specifically, that there was sufficient evidence the urine sample belonged to Williams, notwithstanding his claim of procedural error. The written statement the hearing officer provided satisfied due process, and therefore this claim is denied.

Finally, Williams suggests that he was denied an impartial decision-maker. (DE 1 at 6.) In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and the constitutional standard for improper bias is high. *Piggie*, 342 F.3d at 666. Due process is violated if a prison official who is substantially involved in the underlying incident also acts as a decision-maker. *Id.*; *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). Williams does not allege that this occurred here, nor is there any indication from the record that the hearing officer was involved in any way in the underlying incident leading to the disciplinary charge. Williams appears to argue that the hearing officer was biased because she rejected his chain-of-custody defense, but

adverse rulings alone do not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994). Accordingly, this claim is denied.[1]

For these reasons, the petition (DE 1) is DENIED.

SO ORDERED.

ENTERED:  September 23, 2013

          /s/ JON E. DEGUILIO
Judge
United States District Court

---

[1] Williams also claims that his rights were violated when his administrative appeal was rejected on timeliness grounds. (DE 1 at 6.) The court already resolved this claim in his favor when it denied the respondent's motion to dismiss. (*See* DE 19.)